**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona  85201
(480) 464-1111
Attorney for Plaintiff
Email: centraldocket@jacksonwhitelaw.com
By:   Michael R. Pruitt, No. 011792
        mpruitt@jacksonwhitelaw.com
        Nathaniel J. Hill, No. 028151
        nhill@jacksonwhitelaw.com

**IN THE UNITED STATES DISTRICT COURT,**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jenifer Waelti, filing individually and on behalf of all others similarly situated;<br><br>              Plaintiffs<br><br>vs.<br><br>Sports & Orthopaedic Specialists of Arizona, L.L.C., a domestic limited liability company; Strategic Outsourcing, INC., a/k/a SOI, a foreign corporation; Administaff Companies, Inc., d/b/a Insperity, f/k/a Administaff, a foreign corporation; Craig H. Weinstein, MD, MPH, PC, a domestic professional corporation; and Craig H. Weinstein, MD, MPH and Stacy Weinstein, husband and wife.<br>              Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**The Fair Labor Standards Act, 29 U.S.C. § 201, et seq. and A.R.S. § 23-350, et seq.**<br><br>**Collective Action and Retaliation**<br><br>**Failure to pay wages**<br><br>**(Jury trial requested)** |

Plaintiff, Jenifer Waelti ("Waelti"), individually and on behalf of all other similarly situated current and former employees working at Sports & Orthopaedic Specialists of Arizona, L.L.C. ("Sports & Orthopaedic Specialists"), by and through her counsel undersigned, for her Complaint alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1. This action arises under the statutes of the United States for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 since this matter arises under federal statute.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's Arizona statutory wage claim as it forms part of the same case or controversy.

4. Pursuant to 29 U.S.C. § 216(b), this Court has jurisdiction over this matter as an action brought by Plaintiff as an individual and as a collective action brought on behalf of all current and former similarly situated employees of Sports & Orthopaedic Specialists.

5. Venue is appropriate to this court because the acts alleged herein occurred within this District in the State of Arizona, because Sports & Orthopaedic Specialists conducts business, is headquartered and maintains a statutory agent within this District in the State of Arizona, and because Plaintiff Waelti resides within this District in the State of Arizona.

## PARTIES

6. Plaintiff Jenifer Waelti is filing this collective action as an individual and on behalf of all other similarly situated current and former employees working at Sport & Orthopedic Specialists of Arizona, L.L.C.. Her written consent form for joining this lawsuit is attached herein as Exhibit "1."

7. Plaintiff Waelti was employed as a medical assistant at Sports & Orthopaedic Specialists from August 4, 2008 through January 13, 2012.

2

8. Plaintiff Waelti and all other similarly situated current and former employees working at Sports & Orthopaedic Specialists are covered employees subject to the provisions of the FLSA.

9. Plaintiff Waelti is an employee as defined under A.R.S. § 23-350.

10. Defendant Sports & Orthopaedic Specialists of Arizona, L.L.C. is a domestic limited liability company which is registered with the Arizona Corporation Commission and managed by Defendant Craig H. Weinstein, M.D., M.P.H.

11. Sports & Orthopaedic Specialists operates as a medical clinic specializing in the practice of orthopaedic surgery and sports medicine in Gilbert, Arizona.

12. Defendant Craig H. Weinstein, M.D., M.P.H., is an orthopedic surgeon specializing in sports medicine with a medical practice at Sports & Orthopaedic Specialists.

13. Defendant Strategic Outsourcing, Inc., a/k/a SOI ("SOI"), has provided HR services, employee benefits, payroll processing and related activities for Plaintiff Waelti and the other employees working at Sports & Orthopaedic Specialists, on information and belief, since January 2011.

14. Defendant Strategic Outsourcing, Inc. describes itself as a Professional Employer Organization or "PEO."

15. On its web site, Defendant Strategic Outsourcing, Inc., states that: "Through the unique professional employer organization (PEO) relationship, SOI shares various employer responsibilities with respect to caring for your human resources and complying with business

regulations."[1]

16. Defendant Strategic Outsourcing, Inc. promotes itself as handling regulatory issues, including the FLSA, for its client companies.

17. Defendant Craig H. Weinstein, M.D., M.P.H., PC is the client company name listed on the paycheck and on payroll and tax documents prepared by Defendant Strategic Outsourcing, Inc. for Plaintiff Waelti and, on information and belief, the other employees of Sports & Orthopaedic Specialist.

18. Defendant Administaff Companies, Inc., currently conducting business under the Trade Name Insperity, but formerly operating as Administaff, provided HR services, employee benefits, payroll processing and related activities for Plaintiff Waelti and the other employees working at Sports & Orthopaedic Specialists, on information and belief, prior to January 2011.

19. Defendant Administaff Companies, Inc. describes itself as a Professional Employer Organization or "PEO."

20. On its web site, Defendant Administaff Companies, Inc., currently d/b/a Insperity, f/k/a Administaff, states that: "Insperity delivers its Workforce Optimization solution by entering into a co-employment relationship with a client company and the client company's existing employees, including the business owner. Under this arrangement, Insperity assumes or shares many of the responsibilities of being an employer." [2]

---

[1] http://www.soi.com/employee_hr_solution.html (Accessed April 6, 2012)

[2] http://www.insperity.com/about-us/

4

21. On its web site, Defendant Administaff Companies, Inc., currently d/b/a Insperity, f/k/a as Administaff, states that as part of its Workforce Optimization solution it handles issues such as "government compliance."[3]

22. Defendant Craig H. Weinstein, M.D., M.P.H., PC was the client company name listed on the paycheck and payroll and tax documents prepared by Defendant Administaff Companies, Inc. for Plaintiff Waelti and, on information and belief, the other employees of Sports & Orthopaedic Specialist.

23. Defendant Craig H. Weinstein, M.D., M.P.H., PC is a professional corporation registered with the Arizona Corporation Commission with Defendant Craig H. Weinstein, M.D., M.P.H., serving as President, CEO, Treasurer and Secretary.

24. Upon information and belief, Defendants Craig H. Weinstein, M.D., M.P.H., and Stacy Weinstein are husband and wife.

25. The acts alleged in this Complaint as being performed by Defendant Craig H. Weinstein, M.D., M.P.H., were performed on behalf of, and for the benefit of, the marital community of Defendants Craig H. Weinstein, M.D., M.P.H. and Stacy Weinstein rendering that marital community liable for the actions of Defendant Craig H. Weinstein, M.D., M.P.H.

26. Defendants individually through their substantial and significant involvement and contacts with Plaintiff Waelti and the employees of Sports & Orthopaedic Specialists are covered employers as defined by the FLSA and the Code of Federal Regulations and therefore subject to the

---

[3] http://www.insperity.com/solutions/full-service-hr-peo/what-is-human-resources-management-system/

provisions of the FLSA.

27. Defendants collectively through their substantial and significant involvement and contacts with Plaintiff Waelti and the employees of Sports & Orthopaedic Specialists are covered employers as defined by the FLSA and the Code of Federal Regulations and therefore subject to the provisions of the FLSA.

28. Defendants are joint employers of Plaintiff Waelti and the other employees of Sports & Orthopaedic Specialists as that term is used and defined under the FLSA and the Code of Federal Regulations.

29. Defendants are employers as defined under A.R.S. § 23-350.

**BACKGROUND FACTS**

30. Many employees of Sports & Orthopaedic Specialists, including Plaintiff Waelti and those working as Medical Assistants and Radiology Technicians, are commonly referred to and classified by Defendants as hourly employees (referred to herein as "hourly employees") who are designated to receive an appropriate hourly wage as compensation for any and all hours suffered or permitted to work by their employer.

31. Under the FLSA, covered employees are required to receive an overtime hourly wage at a rate of 1 ½ times their normal hourly rate for hours worked in excess of forty during each and every workweek unless they qualify for a specific exemption contained in the FLSA.

32. Under the FLSA, employers are required to keep timekeeping records that accurately reflect all hours worked by each hourly employee and the compensation they received.

33. The FLSA also prohibits discrimination or retaliation against any covered employee

for attempting to assert his or her rights under the statute.

34. The hourly employees of Sports & Orthopaedic Specialists do not rightly qualify for any of the exemptions found in the FLSA and therefore must legally be paid an overtime hourly wage for all hours worked in excess of forty during each and every workweek.

35. The hourly employees of Sports & Orthopaedic Specialists are not classified or considered by Defendants as qualifying for one or any of the exemptions found in the FLSA.

36. Plaintiff Waelti and the other hourly employees are legally entitled to be compensated at their normal hourly rate for any and all hours worked up to forty in each workweek and at their overtime hourly rate for any and all hours worked over forty in each and every workweek.

37. Pursuant to A.R.S. § 23-350 et seq., Arizona employers must pay all current and former employees all regular and overtime wages earned on a timely basis.

38. Defendants compensated Plaintiff Waelti and other hourly employees by paying them twice a month based on their working 86.67 hours at their normal hourly rate without regard to the actual number of regular or overtime hours they worked.

39. Sometime in late 2011, Defendant Weinstein stated during a monthly staff meeting attended by Plaintiff Waelti that he was aware that the compensation system used by Sports & Orthopaedic Specialist did not reflect actual hours worked but was used because it made it easier to do the budget each month.

40. Prior to sometime on or around September 2011, Defendants did not maintain timekeeping records documenting the actual hours worked by Plaintiff Waelti and other hourly employees.

7

41.     Sometime on or around September 2011, Defendants began to keep timekeeping records allegedly documenting the hours worked by Plaintiff Waelti and other hourly employees.

42.     The timekeeping records kept by Defendants after September 2011 failed to accurately record the actual number of hours worked by Plaintiff Waelti and other hourly employees.

43.     Despite the creation of purported timekeeping records starting sometime around September 2011, Plaintiff Waelti and other hourly employees continued to receive compensation twice a month based on their working 86.67 hours at their normal hourly rate without regard to the actual number of regular or overtime hours they worked.

44.     On numerous occasions, Plaintiff Waelti and other hourly employees were required to work on weekends at special clinics held by Dr. Weinstein and Sports & Orthopaedic Specialists without such time being accurately recorded on any timekeeping records until approximately September 2011 and without ever receiving appropriate compensation for working those hours.

45.     The Office Manager for Sports & Orthopaedic Specialists, Stefanie Davis, told Plaintiff Waelti to work through her lunch break in order to handle an expanding workload.

46.     Plaintiff Waelti and other hourly employees routinely worked through their lunch break and/or outside their normal work hours of 8 to 5 on weekdays without such time being noted or accurately recorded on any timekeeping records and without receiving appropriate compensation for working those hours.

47.     During some of the applicable time period, Plaintiff Waelti and other hourly employees were required by Defendants to turn in inaccurate work records prior to the completion of the workweek that contained estimates of hours that would be worked.

48. Plaintiff Waelti and other hourly employees were routinely required by Defendants to work in excess of 40 hours during a normal workweek without being paid overtime wages.

49. The fact that Plaintiff Waelti and other hourly employees were not paid for all hours worked and not paid the overtime wages legally due them was discussed at one or more monthly staff meetings attended by Office Manager Stefanie Davis and Defendant Weinstein.

50. On more then one occasion, including at monthly staff meetings, Plaintiff Waelti complained to Sports & Orthopaedic Specialists management including Office Manager Davis and Defendant Weinstein that she and others were not being fully compensated for all hours worked and that they were not receiving the overtime wages legally due them.

51. Sports & Orthopaedic Specialists management including Office Manager Davis and Defendant Weinstein have publically acknowledged that the system used by Sports & Orthopaedic Specialists to compensate Plaintiff Waelti and other hourly employees did not constitute payment for actual hours worked and did not include the payment of overtime wages.

52. Sometime on or about December 2011, Plaintiff Waelti and other hourly employees were informed by Dr. Weinstein at a monthly meeting that the compensation system used by Sports & Orthopaedic Specialists was going to be changed starting on January 1, 2012 to one of compensation for actual hours worked.

53. Despite the assurances given by Dr. Weinstein in December 2011, no changes were made to the compensation system used by Sports & Orthopaedic Specialist for Plaintiff Waelti and other hourly employees.

54. Defendant Weinstein informed Plaintiff Waelti that he was aware that she had not

received overtime wages for overtime hours she had worked in the past but that she would not receive compensation to reimburse her for her economic damages because you "can't right the wrongs of the past."

55. On several occasions, Plaintiff Waelti complained directly to Sports & Orthopaedic Specialist management, including Office Manager Davis, her predecessor and Defendant Weinstein, that she was not receiving the overtime wages to which she was entitled. Plaintiff Waelti also complained that she was being forced to sign time sheets that contained inaccurate reflections of the hours she worked.

56. On Monday, January 9, 2012, Plaintiff Waelti was asked to fill out and sign a time sheet covering the period of January 2, 2012 through January 13, 2012. Given that the time sheet would necessarily require estimates of future hours worked, Plaintiff Waelti wrote the word "estimating" on the time sheet along with her initials and the date. Plaintiff Waelti then informed Office Manager Davis that she was uncomfortable signing an estimated time sheet and that she intended to sign the time sheet at the end of the day on Friday, January 13, 2012.

57. On information and belief, Office Manager Davis subsequently complained to Defendant Weinstein that Plaintiff Waelti was causing problems again related to the signing of her time sheet and the compensation system.

58. Shortly thereafter, Plaintiff Waelti was terminated on Friday, January 13, 2012.

59. The termination of Plaintiff Waelti was in whole or in part an act of retaliation for engaging in protected activity under the FLSA.

60. The failure of Defendant to pay Plaintiff Waelti and other hourly employees the

10

overtime wages legally due them is a violation of the FLSA.

61. The inaccurate timekeeping records kept by Defendants, or the lack thereof, related to Plaintiff Waelti and other hourly employees is a violation of the FLSA.

62. The retaliatory acts of Defendants in terminating Plaintiff Waelti for engaging in protected activity is a violation of the FLSA.

63. The failure to pay Plaintiff Waelti and other hourly employees the wages legally due them for all regular and overtime hours worked is a violation of Arizona wage statutes as outlined at A.R.S. § 23-350 et seq.

64. This collective action brought by Plaintiff Waelti on behalf of herself and all other similarly situated hourly employees of Sports & Orthopaedic Specialists, arises from an ongoing illegal and improper scheme by Defendants to systematically and willfully violate the provisions of the FLSA by knowingly and deliberately failing to pay a class of current and former hourly employees the overtime wages legally due them under the FLSA.

65. Defendants exercised control over the wages, hours and working conditions of all hourly employees, including Plaintiff Waelti.

66. For the time frame relevant to this lawsuit, all decision(s) regarding whether or not to pay all legally due wages to Plaintiff Waelti and other hourly employees was done with the knowledge, approval and at the direction of Defendants.

67. Defendants employ human resources personnel and legal counsel to ensure compliance with all applicable state and federal employment statutes, including the FLSA provisions regarding payment of overtime wages and accurate record keeping, and Arizona wage statutes.

11

68.     Defendants knew or should have known that their policies regarding payment of wages as described herein violated the FLSA and Arizona statute and are therefore responsible for such failures.

69.     The actions of Defendants in failing to comply with the provisions of the FLSA were deliberate and willful.

70.     For the time frame relevant to this lawsuit, the illegal policies and practices described herein are part of a centralized policy, practice and scheme developed and orchestrated by Defendants for the purpose of their enrichment and benefit.

71.     The actions of Defendants in not paying all legally required regular and overtime wages to Plaintiff Waelti and overtime wages to those similarly situated employees of Sports & Orthopaedic Specialists has resulted in economic damage to Plaintiff Waelti and those employees.

72.     Pursuant to the provisions of 29 U.S.C. § 216(b), Plaintiff Waelti seeks to pursue an action on behalf of herself as an individual and as a collective action on behalf of a class of all similarly situated current and former hourly employees of Sports & Orthopaedic Specialists who have not been paid all legally required overtime wages in the three years preceding this lawsuit.

73.     As appropriate, Plaintiff Waelti reserves the right to amend and supplement the definition of the previously outlined class of similarly situated individuals as information is disclosed and uncovered through future discovery.

**COUNT 1**
**(Violation of the FLSA, 29 U.S.C. § 201 et seq.)**

74.     All previous paragraphs of this Complaint are realleged as if set forth more fully

12

herein.

75. Defendants individually and collectively are employers as defined by the FLSA and are liable to Plaintiff Waelti and all similarly situated current and former hourly employees of Sports & Orthopaedic Specialist for failure to pay overtime wages.

76. Plaintiff Waelti and all similarly situated current and former hourly employees do not rightly qualify for any of the exemptions to the payment of overtime wages outlined in the FLSA and should rightly be paid overtime wages for all hours worked over 40 in any and all workweeks.

77. Plaintiff Waelti and all similarly situated current and former hourly employees routinely worked, and continue to work, in excess of forty hours during their workweek without receiving overtime compensation in violation of the FLSA.

78. As a result of the illegal and improper policy of Defendants regarding the payment of overtime wages as previously outlined, Plaintiff Waelti and all similarly situated current and former hourly employees of Sports & Orthopaedic Specialists have suffered economic damages in an amount to be proved at trial.

79. The policy of Defendants to not pay legally required overtime wages to Plaintiff Waelti and all similarly situated current and former hourly employees was willful entitling Plaintiff Waelti and any similarly situated collective action members who opt-in to this case to recover damages and collect overtime wages for the three years preceding the date at which they joined this action pursuant to the FLSA and 29 U.S.C. § 255(a).

80. As provided for under federal statute, Defendants are also liable to Plaintiff Waelti and those similarly situated hourly employees for all other available damages, including liquidated

13

damages and their reasonable attorneys' fees and costs.

## Count II
### (Retaliation in violation of the FLSA)

81. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

82. The previously outlined comments and conversations between Plaintiff Waelti and the management of Sports & Orthopaedic Specialist, including office manager Davis, her predecessor and Defendant Weinstein, concerning the lack of overtime wages and timekeeping records that do not reflect actual hours worked constitute protected activity under the FLSA.

83. Defendants involuntarily terminated, discriminated and otherwise retaliated against Plaintiff Waelti in whole or in part for engaging in protected activity under the FLSA.

84. The actions of Defendants as described herein violate the anti-retaliation provisions of the FLSA as outlined in 29 U.S.C. § 215.

85. As a result of the retaliatory actions of Defendants, Plaintiff Waelti has suffered economic damages in an amount to be proved at trial.

86. As a result of the retaliatory actions of Defendants, Plaintiff Waelti is entitled to collect all remedies available to her under the FLSA including liquidated damages, attorneys' fees and costs, punitive damages, compensatory damages including an award for pain and suffering, back pay and reinstatement or in lieu thereof front pay.

87. Plaintiff Waelti is also entitled to collect interest on any damage award.

14

**Count III**
**(Arizona Wage Claim)**

88.     Defendants failure to pay Plaintiff Waelti for all regular and overtime wages earned constitutes a violation of A.R.S. § 23-351, A.R.S. § 23-352 and/or A.R.S. § 23-353, entitling an award of treble damages pursuant to A.R.S. §23-355.

89.     Defendants were not legally entitled to withhold any wages earned by Plaintiff Waelti for the actual hours she worked.

90.     Defendants were never legally entitled to any exemption to the obligation to timely pay Plaintiff Waelti all wages owed.

**WHEREFORE,** Plaintiff Waelti requests that this court enter judgment in her favor and against Defendants as follows:

A.      Declare and certify that this action can proceed as a collective action on behalf of Plaintiff Waelti and the class of similarly situated current and former hourly employees of Sports & Orthopaedic Specialists who have not received all overtime wages legally due them;

B.      That this Court should send out or authorize notice to all similarly situated hourly employees informing them of the opportunity to join or "opt in" to this collective action through the filing of consent to join forms with the Court;

C.      Declare that Plaintiff Waelti and those similarly situated who opt-in to this collective action are legally entitled to collect all overtime wages owed them and that the policy of Defendants to not pay overtime wages is illegal and in violation of the FLSA;

D.  Enter a judgment against Defendants in an amount to be proved at trial as compensation to Plaintiff Waelti and all those similarly situated who opt-in to this collective action for the overtime wages that Defendants illegally and improperly withheld in violation of the FLSA;

E.  Declare that the actions of Defendants in failing to pay overtime wages were willful and that a three year statue of limitations should apply for Plaintiff Waelti and all those similarly situated who opt-in to this collective action for collecting the overtime wages properly due them;

F.  Declare that Plaintiff Waelti and all those similarly situated who opt-in to this collective action are entitled to collect liquidated damages and prejudgment interest on such liquidated sums at the highest legal rate allowable;

G.  Award Plaintiff Waelti and all those similarly situated who opt-in to this collective action their reasonable attorneys' fees, expenses and costs and all other remedies and recoveries available to them under the FLSA;

H.  Declare that the actions of Defendants in terminating and discriminating against Plaintiff Waelti as described herein violate the anti-retaliation provisions of the FLSA;

I.  Order that Defendants reinstate Plaintiff Waelti at the same or similar position as the one she formerly held with no loss of seniority, benefits or salary with no further retaliation against her or in lieu of reinstatement an award of front pay;

J.  Declare that Defendants compensate Plaintiff Waelti with back pay, lost employment

16

benefits and all other available monetary and non-monetary benefits;

K. Order that Defendants pay Plaintiff Waelti compensatory damages including pain and suffering and punitive damages sufficient to punish Defendants and deter retaliatory conduct in the future;

L. Award Plaintiff Waelti interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

M. Award Plaintiff Waelti treble damages for her unpaid wages under Arizona law;

N. Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants to file such reports as the Court deems necessary to evaluate such compliance; and

O. For such other and further relief as this Court deems proper and just given the circumstances of this case.

**DATED** this 16th day of May, 2012.

**JACKSON WHITE**
 s/ Michael R. Pruitt
Michael R. Pruitt, No. 011792
Nathaniel J. Hill, No. 028151
40 N. Center Street, Suite 200
Mesa, Arizona 85201
Attorneys for Plaintiff

17